**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**MEDTRONIC, INC., a Minnesota Corporation; and MEDTRONIC USA, INC.,a Minnesota Corporation,**

Plaintiffs,

v.

**GUIDANT CORP., an Indiana Corporation; CARDIAC PACEMAKERS, INC., A Minnesota Corporation; and GUIDANT SALES CORP., INC.,**

Defendants

Civil File No. 00-1473 (MJD/JGL)

**ORDER**

---

**CARDIAC PACEMAKERS, INC. and GUIDANT SALES CORP.,**

Counter Plaintiffs,

v.

**MEDTRONIC, INC.,**

Counterclaim Defendant

Civil File No. 00-2503 (MJD/JGL)

---

APPEARANCES

Andrew Horstman, Esq., and Stephanie Kravetz, Esq., for Plaintiffs.

Charles Webber, Esq., and Stephen Sherry, Esq., for Defendants.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on December 14, 2001 on

DEC 20 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Plaintiff's Motion for Entry of Protective Order (Doc. No. 41). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I. INTRODUCTION

This motion arises out of a patent infringement case. Both parties manufacture medical devices and the instant litigation concerns implantable atrial defibrillators. In March 2001, the parties entered into a temporary protective order to govern discovery in this case. That order, currently in effect, provides that all documents produced in the case shall be designated as "Outside Attorney Eyes Only." The parties have been working for almost a year to draft an acceptable permanent protective order. They have reached agreement in most areas but now seek the Court's assistance in deciding the parameters of five contested paragraphs. Specifically, the parties disagree about the dissemination of documents originally marked "Outside Attorney Eyes Only" to in-house counsel, and about counsels' ability to prosecute patents after receiving the other party's confidential information.

## II. ANALYSIS

Fed. R. Civ. P. 26(c) governs protective orders and provides:

> Upon motion by a party or by the person from whom discovery is sought, . . . for good cause shown, the court in which the action is pending . . . may make an order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense including . . . that a trade

> commercial information not be revealed or be revealed only in a designated way.

Fed. R. Civ. P. 26(c)(7). A court has broad discretion in determining whether a protective order is warranted and the appropriate degree of protection. See May Coating Techs., Inc. v. Illinois Tool Works, 157.F.R.D. 55, 57 (D. Minn. 1994) (citations omitted).

**A. Paragraph 3**

In this case, there is no question that a protective order is warranted. The discovery in this case will likely yield highly sensitive trade secrets and research information which must be protected. To that end, Plaintiff argues that Paragraph No. 3 of the protective order must state that "Outside Attorney Eyes" not only applies to information relating to products currently in development and not yet commercially released, but also to "products currently released which information could, if viewed by in-house attorneys of the other party, lead to significant competitive or commercial disadvantage to the designating party or significant competitive advantage to the receiving party."

Plaintiff argues that information related to its already released products is "so highly sensitive that disclosure to anyone inside [Defendant's organization], including in-house counsel, could give [Defendant] a significant competitive advantage." At this point, Plaintiff does not object to disclosing this

information, but requests that the information be viewed by outside counsel only.

Defendant responds that Plaintiff offers no legitimate justification for treating in-house counsel as "second class citizens." Defendant's designated in-house counsel are Ralph F. Hall, Esq., and Richard R. Clapp, Esq. Defendant argues that Mr. Hall and Mr. Clapp have no involvement in the design and development of Defendant's products aside from Mr. Clapp's role in evaluating CPI's products for general patent and trademark advice. Mr. Hall and Mr. Clapp are not involved in any competitive decisionmaking. These facts, argues Defendant, provide a sufficient bases for allowing Mr. Hall and Mr. Clapp access to Plaintiff's confidential information regarding already released products.

The Court finds U.S. Steel v. United States, 730 F.2d 1465 (Fed. Cir. 1984), instructive and applicable. In U.S. Steel, the Federal Circuit held that in-house counsel are not inherently more likely to make inadvertent or accidental disclosure of confidential information than retained counsel. See id. at 1467-68 (stating further that business clients and retained counsel often enjoy "long and intimate relationships and activities"). The court in U.S. Steel looked to the circumstances of the relationship between a lawyer and client, particularly "counsel's activities, association, and relationship with a party." Id. at 1468. When in-house counsel is involved in "competitive

decisionmaking," it may be appropriate to deny in-house counsel access to another party's confidential information. See id. The court noted that in-house counsel are subject to the same rules of professional responsibility and corresponding sanctions as retained counsel. See id.

In the instant case, the Court is satisfied that allowing Mr. Hall and Mr. Clapp access to Plaintiff's information will not result in an unacceptable "risk of inadvertent disclosure" of confidential information to Defendant. See Matsushita Elec. Indus. Co., Ltd. v. United States, 929 Fed.2d 1577, 1580 (Fed. Cir. 1991). Defendant has stated that Mr. Hall and Mr. Clapp have no involvement in the design and development of Defendant's products and give Defendant no advice regarding employment, sales, marketing, or pricing. Plaintiff does not rebut these statements.

Plaintiff argues that the correct standard is not one of "competitive decision-making," but one of prejudice to the non-moving party. Before Defendant's in-house counsel is afforded access to confidential information, Plaintiff would have Defendant demonstrate an inability to effectively litigate its case without their involvement. To support its argument, Plaintiff cites case law from other circuits. The Court declines to adopt this position. Rule 26 places the burden of demonstrating the need for a protective order on the party seeking such an order, not on the party opposing the order. See Fed. R. Civ. P. 26(c).

The Court is satisfied that limiting access to the two in-house counsel named in Defendant's motion papers achieves the proper balance between protection of confidential information and the ability of parties to effectively litigate their cases. In addition, the Court finds that the detailed protective order drafted by the parties provides sufficient protection for confidential information.

To that end, the Court agrees with Plaintiff that Paragraph 13 of the protective order controls: "All documents and things produced or exchanged during this litigation shall not be disclosed or used except for the purpose of conducting this litigation." The Court will not assume that in-house counsel are less likely than outside counsel to comply with this requirement regarding disclosing information to Defendant. In addition, this litigation focuses on the Jewel® AF and the GEM® III AT, products already developed and ready for market. These products will likely be the subject of a majority of the discovery in this case. It is reasonable for Defendant to expect that its entirc litigation team be allowed to view any relevant documents. Thus, Defendant's version of Paragraph 3 controls. Accordingly, this part of Plaintiff's motion is denied.

**B. <u>Paragraph 16</u>**

Plaintiff argues that if "Outside Attorney Eyes" information becomes the basis for expert opinions and reports, the expert reports

containing references to the "Outside Attorney Eyes" information must be redacted before the information may be disseminated to in-house counsel. Plaintiff asserts that this is necessary to protect its "highly sensitive information."

For the reasons stated above regarding Paragraph 3, the Court does not find this argument compelling. Paragraph 16 provides that only specifically named in-house attorneys have access to this information. This list is sufficiently small and the attorneys are sufficiently far removed from "competitive decisionmaking," that the Court is satisfied that disclosure to them does not present an undue risk of inadvertent disclosure of Plaintiff's confidential information. In addition, the Court agrees with Defendant that it is likely that a relatively small amount of information will be disseminated under this paragraph. Thus, Defendant's version of Paragraph 16 controls. Accordingly, this part of Plaintiff's motion is denied.

### C. <u>Paragraph 24</u>

Plaintiff argues that it must be allowed to object to the dissemination of confidential information to any non-testifying consulting expert who executes a signed undertaking. Defendant responds that allowing a veto of a non-testifying consulting experts would needlessly "bog down" the discovery process. The Court agrees with Defendant.

The parties have created a process for protecting their confidential information. Paragraph 23 of the protective order and the signed undertakings which will be executed in compliance with that paragraph (Ex. A) provide comprehensive protection for both parties. Allowing objections to non-testifying experts would cause discovery to drag on needlessly. To rule otherwise creates the potential for a long series of expert vetoes. Finding an appropriate expert can be a time consuming and expensive process. The Court declines to further protract that process by allowing these vetoes. Thus, Defendant's version of Paragraph 24 controls. Accordingly, this part of Plaintiff's motion is denied.

**D. Paragraphs 14 & 15**

Paragraphs 14 and 15 deal with the dissemination of confidential information to counsel who are involved in prosecuting patents on behalf of the parties. Plaintiff insists that "Attorney Eyes Only" information not be disseminated to persons or entities who, for the period of one year after the conclusion of the instant litigation, are "involved in the prosecution or drafting of patent applications, claim language for patent applications, or arguments made in support of patent applications, before the U.S. PTO or similar foreign patent agencies for inventions related to the treatment of abnormal cardiac rhythms or are . . . involved in supervising in-house counsel or outside counsel

in this work." This prohibition would include the dissemination of information to one of Defendant's law firms, McAndrews, Held and Malloy, Ltd.

Plaintiff argues that this prohibition is necessary because Defendant asserted in its motion papers that, in order to comply with PTO disclosure obligations, it may be necessary to disclose confidential information which it learns in the course of this litigation. Since information disclosed to the PTO becomes public information, Plaintiff fears that disclosure could cause it irreparable harm. Furthermore, Plaintiff asserts that this prohibition is necessary because once Defendant and its counsel have seen Plaintiff's confidential information, Defendant will be better able to "write around" Plaintiff's patents when drafting its own patent applications.

The same parties entered into a similar agreement in conjunction with previous litigation in California. However, the California agreement contained no prohibition on "supervisory" duties.

Defendant argues that in order to effectively litigate this case, all its attorneys must be allowed access to confidential information. In addition, Defendant takes exception to the inclusion of a prohibition on supervisory activities. Defendant argues that the term "supervisory activities" is too vague to be enforceable. Defendant states that although the law firm of McAndrews, Held and Malloy is not actively involved in prosecuting patents, the firm does supervise those attorneys who prosecute Defendant's patents.

Although none of the cases cited by Plaintiff are controlling in this jurisdiction, Motorola, Inc. v. Interdigital Tech. Corp., No. 93-488-LON, 1993 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994) is helpful. In that case, the court reasoned that patent prosecution attorneys who "view voluminous confidential information and then later prosecute . . . patents . . . have to constantly challenge the origin of every idea" so as to avoid violating a protective order's prohibition on use of confidential information. See id. at **14-15.

In this respect, prosecuting patents is distinct from other legal duties and presents unique opportunities for inadvertent disclosure. The Court finds that deciding what to disclose to the PTO and how to draft patent claims qualify as "advice and participation in . . . [a] client's decisions . . . made in light of similar information about a competitor." Matsushita, 929 F.2d at 1579 (quoting U.S. Steel, 730 F.2d at 1469 n.3). In an attempt to comply with disclosure requirements, it may be difficult to separate one's own ideas from ideas gleaned during this litigation. See Motorola, 1993 U.S. Dist. LEXIS 20714, at *14. Prosecuting a patent requires a working knowledge of the proposed device and its relationship to prior art. Such an intimate relationship with the device itself makes a limit on Defense counsel's ability to prosecute patents appropriate. As the U.S. Steel court stated, "[i]nadvertence . . . is no respecter of its victims." U.S. Steel, 730 F.2d at 1468.

The Court's decisions regarding paragraphs 3, 16, and 24 of the protective order have afforded Defendant and Defendant's counsel broad access to Plaintiff's information. While the Court is certain that Defendant's counsel would not purposely use Plaintiff's confidential information, the Court finds that it would be unfair to create a situation in which Defendant could inadvertently use that information in the prosecution of patents for inventions related to the treatment of abnormal cardiac rhythms.

In addition, Defendant and Plaintiff agreed to a similar prohibition just eighteen months ago in the California case. The Court also notes that Plaintiff's proposed paragraphs 14 and 15 are not blanket prohibitions. There is a realistic time limit on counsels' inability to prosecute patents. Thus, the Court finds that a prohibition on counsel's ability to prosecute patents in the area of abnormal cardiac rhythm treatment is reasonable. At this juncture, Defendant must make choices among its counsel and decide who will access "Attorney Eyes Only" information and who will prosecute patents during the relevant time period.

Notwithstanding the above, the Court agrees with Defendant that the word "supervise" is too vague to be enforceable. To limit the supervisory activities of the litigating attorneys goes too far. Plaintiff's proposed paragraphs 14 and 15 prohibit specific duties. That list is sufficiently comprehensive and enforceable. The Court finds that Plaintiff's confidential information can be

protected from inadvertent disclosure to the PTO and from inadvertent use during claim drafting by prohibiting access only to those attorneys who actually draft patent applications, claim language for patent applications, or arguments made in support of patent applications related to the treatment of abnormal cardiac rhythms. Thus, Plaintiff's version of paragraphs 14 and 15 control <u>except</u> for the following changes:

**Paragraph 14A**

(1) McAndrews, Held and Malloy Limited shall be included in the list of firms to whom "Outside Attorney Eyes Only" information may be disseminated.[1]

(2) The phrase "or in supervising in-house counsel or outside counsel in this work" shall be stricken from the paragraph.

**Paragraph 15**

(1) The phrase "or are not involved in supervising in-house counsel or outside counsel in this work" shall be stricken from the paragraph.

Accordingly, this part of Plaintiff's motion is granted in part and denied in part.

---

[1]This is assuming, of course, that the firm continues to only supervise patent prosecution and does not become involved in the actual patent prosecution.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Plaintiff's Motion for Entry of Protective Order (Doc. No. 41) is **GRANTED IN PART and DENIED IN PART** as set forth fully in the body of this order; and

(2) Plaintiff's Counsel shall draft a protective order which complies with this Order of the Court and shall provide that protective order to the Court for its signature, after approval by the Defendant, no later than January 15, 2002.

Dated: December 19, 2001.

JONATHAN LEBEDOFF
United States Magistrate Judge