UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**MEDTRONIC, INC., a Minnesota Corporation; and MEDTRONIC USA, INC., a Minnesota Corporation,**

Plaintiffs,

v.

**GUIDANT CORP., an Indiana Corporation; CARDIAC PACEMAKERS, INC., a Minnesota Corporation; and GUIDANT SALES CORP., INC.,**

Defendants.

Civil File No. 00-1473 (MJD/JGL)

**ORDER**

---

**CARDIAC PACEMAKERS, INC.; and GUIDANT SALES CORP.,**

Counter Plaintiffs,

v.

**MEDTRONIC, INC.,**

Counterclaim Defendant.

Civil File No. 00-2503 (MJD/JGL)

---

APPEARANCES

Andrew Horstman, Esq., and Niall A. Macleod, Esq., for Medtronic, Inc.

Stephen Sherry, Esq., and Peter J. McAndrews, Esq., for Cardiac Pacemakers, Inc. and Guidant Corp.

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on January 7, 2003 on

FILED 1-8-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Guidant/CPI's Motion to Compel Production of Certain Medtronic Lab Notebooks and Certain Other Technical Documents (Doc. No. 61 in Case 00-CV-2503); Guidant/CPI's Motion to Compel Answers to Interrogatory Regarding Medtronic's Section 102(g) Invalidity Defense (Doc. No. 84 in Case 00-CV-1473); and Medtronic's Motion to Compel Discovery and for Protective Order (Doc. No. 87 in Case No. 00-CV-1473). The cases have been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. INTRODUCTION

These motions arise out of a patent infringement dispute. The facts of the cases have been described in other orders of this Court and will not be recited here. Medtronic and Cardiac Pacemakers, Inc./Guidant ("CPI") are currently before the Court regarding several discovery disputes.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1).

**A. <u>CPI's Motion to Compel Production of Certain Medtronic Lab Notebooks and Certain Other Technical Documents</u>**

CPI seeks an order requiring Medtronic to produce certain lab notebooks, lab notebook indexes, and technical documents. The Court will address each of CPI's requests separately.

**1. <u>Whether Medtronic Must Produce Dr. Mehra's Lab Notebooks</u>**

CPI argues that it is entitled to Dr. Mehra's lab notebooks for the time period from 1991 to November 1993. Dr. Mehra is a senior research scientist for Medtronic. According to CPI, this is the time period during which Medtronic was conducting much of its research related to atrial defibrillators, the type of devices at issue in this case. CPI states that Dr. Mehra conducted research in this area during this time period. CPI is suspicious of Medtronic's previous production because in response to discovery requests, Medtronic first told CPI that there were no lab notebooks for this time period, but later stated that there were no <u>relevant</u> lab notebooks for this time period, and produced three responsive notebooks.

Medtronic responds that it has produced all lab notebooks containing information related to the products at issue in this case. Specifically, Medtronic asserts that it has produced not only all of Dr. Mehra's notebooks concerning the Jewel® AF and the GEM® III AT, the products a:

issue in this case, but also all notebooks that contain any information about atrial defibrillators or atrial defibrillation.

The Court finds that only Dr. Mehra's lab notebooks relating to the products at issue in this case and atrial defibrillation or atrial defibrillators are relevant and discoverable. The Court accepts Medtronic's assertion that the late production occurred as a result of Medtronic's further search for lab notebooks related to atrial defibrillation. Unlike CPI, the Court does not find this late production suspicious. Although the Court agrees with CPI that lab notebooks related to Dr. Mehra's atrial defibrillation work are relevant, the Court is not convinced that CPI has failed to produce all such notebooks. The Court is confident that Medtronic will continue to comply with its discovery obligations and will produce more lab notebooks, should they become available. Therefore, this part of CPI's motion is denied.

### 2. Whether Medtronic Must Produce Its Lab Notebook Indexes

CPI seeks production of Medtronic lab notebook indexes so that it can verify that all relevant notebooks have been produced. CPI argues that this information is relevant and that it should not be burdensome for Medtronic to produce this information since it is kept in the ordinary course of business.

Medtronic responds that this information is not relevant to this case. Medtronic states that it has already produced all relevant lab notebooks, and that Guidant wants this information for a "fishing expedition."

In its motion papers, CPI states that this information is responsive to its Document Request Nos. 30, 32-33, 41, and 43. (CPI Mem. Supp. Mot. Compel Prod. at 7.) However, CPI does not provide the Court with copies of these document requests.[1]

Fortunately, Medtronic has provided copies. (Horstman Aff. Ex. 1 at 7-8, 11-12.) The Court has reviewed these requests and finds that CPI's current request for an index of all lab notebooks is considerably broader than the cited document requests which all refer to implantable atrial defibrillators, the Jewel AF, and the GEM III AT. The Court finds that Medtronic has provided information responsive to the cited document requests. Therefore, this part of CPI's motion is denied.

### 3. **Whether Medtronic Must Produce Technical Documents**

CPI seeks production of certain technical documents and drawings. After oral argument, it seems that the crux of this dispute is whether Medtronic must produce larger, more easily readable copies of schematics and other drawings which it has already produced. Medtronic

---

[1]CPI is reminded that future discovery motions must be in the format required by D. Minn. LR 37.2.

states that the documents listed in CPI's motion have been produced in the only format which is available to Medtronic's Counsel. In fact, at the motion hearing, Medtronic's Counsel stated that they produced their own enlarged versions of some of the same technical drawings so that they could more easily understand them. Medtronic's Counsel stated that his client has not even provided bigger copies to them, and that the information simply does not exist in any other version.

Medtronic is only required to produce documents as it maintains them in the ordinary course of business. See Fed. R. Civ. P. 34(b). Medtronic states that it produced that documents "as they exist" and that no other versions of the drawings are available. (Medtronic Mem. Opp. CPI Mot. Compel Prod. at 4.) While the Court finds CPI's argument that Medtronic's engineering department must have better quality drawings available enticing, the Court has seen no evidence to support such a claim. Therefore, this part of CPI's motion is denied.

In conclusion, Guidant/CPI's Motion to Compel Production of Certain Medtronic Lab Notebooks and Certain Other Technical Documents is denied in its entirety.

**B. CPI's Motion to Compel Answers to Interrogatory Regarding Medtronic's § 102(g) Invalidity Defense**

CPI seeks information related to Medtronic's claim that it, rather than the named inventors, is the inventor of five of the patents at issue in this

case. Medtronic first raised this defense in its October 23, 2002 Amended Response Charts. Specifically, Medtronic asserted that:

> [t]o the extent Guidant alleges, or the Court construes, the claims [of the patents at issue in this case] to cover methods and apparatus associated with Medtronic's Jewel® AF 7250 or Gem® III AT 7276 devices, the claims are invalid under 35 U.S.C. § 102(g) in light of the products themselves, development work on which began at least as early as March, 1994.

(CPI Mem. Supp. Mot. Compel Answer at 2.)

Medtronic argues that it need not answer this "contention interrogatory" until after the Court issues its claim construction order in this case. Medtronic asserts that if the Court construes the claims at issue in a certain way, it may abandon this defense altogether. Moreover, Medtronic argues that answering this interrogatory will require it to provide privileged information regarding its assumptions about how CPI is construing the patent claims at issue in this case. As an alternative argument, Medtronic asserts that it has answered this interrogatory in compliance with Federal Rule of Civil Procedure 33(d).

CPI's Interrogatory No. 1 asks Medtronic to:

> describe in detail the basis or bases for Medtronic's allegations that the asserted claims of the above-identified patents are "invalid under 35 U.S.C. § 102(g)," including, without limitation, the following for each claim that Medtronic alleges is invalid:
>
> (a) identify and describe, separately for each claim, the earliest alleged <u>conception and reduction to practice</u> (actual or constructive) by Medtronic of the method or apparatus described in such claim, <u>including the dates</u> . . . <u>and</u>

circumstances of such alleged conception and reduction to practice;

(b) identify, separately for each claim, all documents . . . and things . . . if they have not been produced, that Medtronic alleges corroborates its responses to subparagraph (a) above; and

(c) identify . . . the person or persons responsible for the development work or activity described in Medtronic's responses to subparagraph (a) above.

(CPI Mem. Supp. Mot. Compel Answer at 4) (emphasis in original).

35 U.S.C. § 102(g), the statute upon which Medtronic bases this defense, states that a patent will not issue if another person can establish that "before such person's invention thereof the invention was made by such other inventor and not abandoned, suppressed or concealed. . . . In determining priority of invention under this subsection, there shall be considered . . . the respective dates of conception and reduction to practice of the invention." The Court finds CPI's interrogatory sufficiently narrow to obtain discovery relevant to Medtronic's § 102(g) defenses. This interrogatory seeks the factual basis for Medtronic's §102(g) defenses and will help narrow and define the issues of the case. This information is relevant and discoverable. Thus, the issue becomes whether Medtronic must answer this interrogatory at this time, or whether it may wait to answer until the Court has issued its claim construction order.

First, the Court finds that Medtronic must answer the interrogatory now. Under our rules, discovery is broad. See Fed. R. Civ. P.

26(b)(1). The fact that a defense may be dropped as the case progresses does not prevent discovery related to that defense as long as it is still part of the case. Medtronic's insistence that the Parties wait to conduct discovery on this particular defense is untenable. See Mead Corp. v. Riverwood Natural Res. Corp., 145 F.R.D. 512, 515-16 (D. Minn. 1992) (rejecting argument that since investigation and preparation of the case is ongoing, the parties should wait until they know exactly what supportive facts they intend to rely on before answering interrogatory).[2] Medtronic asserted this defense. It certainly should expect discovery requests related to it. Moreover, the Court finds persuasive CPI's argument that holding off on discovery prejudices CPI's ability to design an effective discovery strategy that complies with the Pretrial Scheduling Order in this case.

Second, the Court finds Medtronic's work product objection without merit. As CPI's Counsel stated at the motion hearing: this

---

[2]Contrary to the argument Medtronic raised at the motion hearing that none of CPI's cited cases address whether interrogatories were premature, the Court finds that this portion of Mead does address the issue of allegedly premature interrogatories. Furthermore, the Court finds the fact that Mead and the other case CPI cites in its brief were decided prior to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996) unimportant. Medtronic fails to identify, and the Court cannot find, anything in Markman which is at odds with the holding in Mead. Markman addressed the issue of whether claim construction should be a jury question. See Markman, 517 U.S. at 372. Mead addressed discovery issues, specifically whether interrogatories must be answered in spite of the fact that discovery is ongoing and a case is still developing. See Mead, 145 F.R.D. at 516.

interrogatory seeks only the factual evidentiary bases for Medtronic's prior art defense. Such interrogatories do not implicate the work product doctrine. See id. at 518 (requiring answer to an interrogatory requesting the facts which support the party's defenses and the names of people knowledgeable of those facts). Surely Medtronic has the factual bases, circumstances, specific dates, and names of the alleged prior-inventors to support its defense. See Motorola, Inc. v. Alexander Manuf. Co., No. C 90-3062, 1991 WL 325499, at *1 (N.D. Iowa Dec. 30, 1991). All CPI requests are facts, not opinions or speculations. These facts will not change based on the Court's claim construction. There is no reason to delay discovery on this issue.

Third, the Court finds Medtronic's prior answer unresponsive. Medtronic's answer stated that it was relying on Rule 33(d) and that "the answer to this interrogatory may be found in development documents for Jewel AF 7250 and Gem III AT 7276 devices, including 'meeting minutes.'" (CPI Mem. Supp. Mot. Compel Answer at 4) (emphasis omitted). While the Court believes Medtronic when it states that its use of the word "may" was not intended to convey a cryptic message, the Court finds that identifying "development documents" and "meeting minutes" is insufficient in this case. Medtronic has produced almost 300,000 documents. Medtronic must supplement its Rule 33(d) answer so that CPI can easily access responsive information. See Fed. R. Civ. P. 33(c) advisory committee notes (1980 amendment) (stating that a party

exercising its option to produce business records must do so in a manner that "permits the same direct and economical access that is available to the party"); see also Fed. R. Civ. P. 33(c),(d) advisory committee notes (1993 amendment) (stating that former subdivisions (b) and (c) are renumbered as subdivisions (c) and (d)).

Lastly, the Court finds Medtronic's reference to the Court's ruling on Medtronic's former contention interrogatory misplaced. That interrogatory specifically asked CPI to provide its construction of the claims at issue in this case. (July 25, 2002 Order at 2-3.) The Court found that asking CPI to provide the claim construction was at odds with Markman. (Id. at 4.) The instant interrogatory is distinguishable. CPI's Interrogatory No. 1 seeks the factual bases upon which Medtronic bases its defense. Unlike Medtronic, CPI is not asking for a legal conclusion. See Markman, 517 U.S. at 391 (holding that claim interpretation is a matter of law reserved for the courts). Rather, CPI is asking for facts and evidence. This is a proper interrogatory.

Accordingly, CPI's Motion to Compel Answers to Interrogatory Regarding Medtronic's § 102(g) Invalidity Defense is granted. Medtronic must provide responsive answers within thirty days of this Order.

### C. Medtronic's Motion to Compel Discovery and for a Protective Order

Medtronic raises three issues in its motion to compel. The Court will address each issue separately.

### 1. Whether Medtronic is Entitled to a Protective Order Requiring CPI to Produce Prepared Witnesses and to Refrain From Inappropriate Deposition Conduct

Medtronic argues that a protective order is necessary so that it can conduct meaningful depositions. Medtronic asserts that the conduct of CPI's Counsel during the deposition of Mr. Foshee was so obstructive that a protective order is required to ensure that future depositions go smoothly. Medtronic also argues that Mr. Foshee was ill-prepared for his deposition.

The Court has reviewed the transcript of Mr. Foshee's deposition and finds that Mr. Foshee was properly prepared. (Horstman Aff. Ex. 5 at 7-9, 17, 24-25, 62). The transcript also reveals that Mr. Foshee answered the vast majority of Medtronic's questions without incident or objection. The transcript further indicates that while some of CPI Counsel's objections were long-winded, they were not entirely improper. The Court does not find that the deposition of Mr. Foshee requires the Court to issue a protective order regarding depositions. The fact that Medtronic does not even assert that it was unable to obtain meaningful testimony from Mr. Foshee bolsters this finding. At this time, the Court will only remind Parties and their Counsel of their obligations regarding depositions: (1) witnesses must be prepared, and (2) all objections must be stated concisely and without colloquy. See Fed. R. Civ. P. 30(b),(c),(d). This part of Medtronic's motion is denied.

**2. Whether A Court Order is Necessary to Schedule Medtronic's 30(b)(6) Depositions**

Medtronic argues that an order is required to force the scheduling of three of its 30(b)(6) depositions. Medtronic asserts that it first noticed these depositions in May and June 2002. However, it appears that Medtronic did not press the issue until December 2002, when it represented to CPI that Medtronic would prefer to schedule the depositions in "late-January, February, or March 2003." (CPI Mem. Opp. Medtronic's Mot. Compel at 2) (emphasis omitted). Given these facts, the Court is unsure why this matter is even before the Court. However, since the Parties feel the need for an order, the Court will issue one. Unless the Parties agree to a different schedule, the three 30(b)(6) depositions at issue in this motion must be conducted by March 31, 2003. Thus, this part of Medtronic's motion is granted.

**3. Whether CPI Must Produce Documents from Another Case**

Medtronic argues that it is entitled to documents related to CPI's claim for up-front royalty damages. Specifically, Medtronic asserts that CPI is basing its preliminary request for such damages upon the up-front damages awarded in Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., and that Medtronic is entitled to the St. Jude documents related to this issue.

CPI responds that it is not relying on St. Jude as a basis for its up-front royalty demand. (McAndrews Aff. Ex. A at 1.) CPI asserts that it only

referenced St. Jude in its preliminary damages calculations as a way to demonstrate the reasonableness of its damage claims in the instant case. In addition, CPI argues that producing the requested information would cause it to violate the confidentiality agreement still in effect in St. Jude. CPI has already produced all relevant St. Jude documents that are not covered by the protective order in that case.

For the following reasons, this part of Medtronic's motion is denied. First, since the St. Jude information is no longer the bases of any claim or defense in this case, the Court finds that the information is irrelevant and not discoverable. See Fed. R. Civ. P. 26(b)(1).

Second, Medtronic's request is overly broad. Request No. 47 seeks "[a]ll documents relating to [the] up-front royalty claim, litigated in [St. Jude] . . . including all pleadings, all documents evaluating that claim, all expert reports, [and] any documents received in response to the up-front royalty claim." (Horstman Aff. Ex. 4 at 2.) Among other things, all information relating to the claim will include all information examined by the St. Jude experts and others. This is just too broad and too burdensome for the Court to allow.

Third, even if the Court were inclined to order this production at this time, that is no guarantee that the production would ultimately occur. The St. Jude protective order states:

> If any party is served with a subpoena or other notice compelling the disclosure of Confidential Information, that party shall give

> written notice to the Designating Party, as far in advance of the requested production date as is reasonably possible, so that the Designating Party shall have the opportunity to object to the disclosure.

(McAndrews Aff. Ex. D ¶ 20.) In fairness, should St. Jude object to any court ordered production, the Court would conduct another hearing on the issue. For all the forgoing reasons, this part of Medtronic's motion is denied.

In conclusion, Medtronic's Motion to Compel Discovery and for a Protective Order is granted in part and denied in part.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Guidant/CPI's Motion to Compel Production of Certain Medtronic Lab Notebooks and Certain Other Technical Documents (Doc. No. 61 in Case No. 00-CV-2503) is **DENIED**;

(2) Guidant/CPI's Motion to Compel Answers to Interrogatory Regarding Medtronic's § 102(g) Invalidity Defense (Doc. No. 84 in Case No. 00-CV-1473) is **GRANTED**;

(3) Medtronic's Motion to Compel Discovery and for a Protective Order (Doc. No. 87 in Case No. 00-CV-1473) is **GRANTED IN PART** and **DENIED IN PART**, as set forth fully in the body of this Order;

(4) Medtronic must comply with this Order and produce discovery responses by February 10, 2003; and

(5) Unless the Parties agree to a different schedule, Medtronic's three 30(b)(6) depositions first noticed in May and June 2002 must be conducted by March 31, 2003.

Dated: January 8, 2003

JONATHAN LEBEDOFF
Chief United States Magistrate Judge