**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Medtronic, Inc.
and Medtronic USA, Inc.,

Plaintiffs and
Counterclaim Defendants,

v.

Guidant Corporation
and Cardiac Pacemakers, Inc.,

Defendants and
Counterclaim Plaintiffs.

Civil File No. 00-1473 (MJD/JGL)

**MEMORANDUM AND ORDER**

---

Michael V. Ciresi, Andrew W. Horstman, Kevin D. Conneely, Stephanie J. Kravitz, and Niall A. MacLeod, Robins, Kaplan, Miller & Ciresi L.L.P. for and on behalf of Plaintiffs.

Timothy J. Malloy, Stephen F. Sherry, McAndrews, Held & Malloy, Ltd.; Kenneth A. Liebman, Charles F. Webber, Faegre & Benson LLP for and on behalf of Defendants.

---

## I. INTRODUCTION

This matter is before the Court on Plaintiff Medtronic, Inc.'s ("Medtronic") Motion for Summary Judgment with respect to U.S. Patent No. 5,490,862 ("'862 Patent"). Medtronic, in its Second Amended Complaint, seeks a Declaratory Judgment stating that it had "a reasonable apprehension that . . . [Medtronic] will be sued by . . . CPI for infringement of CPI's ['862 Patent]." Defendants Guidant Corporation and Cardiac Pacemakers, Inc. (collectively "CPI") allege in their Second Amended Counterclaim that Plaintiff is infringing the '862 Patent.

FILED MAY 2 0 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAY 2 0 2003
DEPUTY CLERK

Medtronic filed an Answer to CPI's Counterclaim asserting the affirmative defense that Medtronic had a license to practice the '862 Patent. Medtronic brings this Motion under Fed. R. Civ. P. 56(c) and requests that the Court grant summary judgment on all claims for infringement of the '862 Patent. Medtronic further asserts that if summary judgment is granted, it will voluntarily dismiss its declaratory judgment claim relating to the '862 Patent.

## II. BACKGROUND

This case, and its related case, Civil File No. 00-2503, collectively involve nine patent infringement claims asserted against Medtronic. All of the claims involve implantable cardiac stimulation devices that detect and treat atrial fibrillation. The specific patent at issue in this motion is for a device entitled "Atrial Defibrillator Having Patient Activated Modality."

### A. The Agreement

In early 1991, Medtronic was engaged in several patent infringement lawsuits with CPI and Eli Lilly ("Lilly"). The parties entered into a License Agreement ("The Agreement") on May 13, 1991, in order to settle those disputes and as an attempt to avoid future disputes. The Agreement cross-licensed certain patents relating to cardiac defibrillation and pacing technologies. See Lic. Agreement, § 2.01. The Agreement also contained provisions for Alternative Dispute Resolution ("ADR") and stipulated that Minnesota state law should govern interpretation of The Agreement. See id. §§ 8.02, 9.05.

**1. "Licensed Patents"**

Under The Agreement, "Licensed Patents" are any and all patents relating to Cardiac Stimulation Devices in the Field of Use "issued after the Effective Date from patent applications filed on or before the Effective Date, including all patents maturing from continuations, continuations-in-part, and divisional applications or reissues or reexaminations of such patents[.]" Id. § 1.05(c). The parties attached, as Exhibit A, a list of all patents and patent applications they believed existed as of the Effective Date of The Agreement. See id.

As defined in The Agreement, "Cardiac Stimulation Device" means a device that electrically stimulates or shocks the heart that is suitable for use by or with human patients. See id. § 1.02. The Agreement defines "Field of Use" as "the use of Cardiac Stimulation Devices in the field of cardiac rhythm management . . . excluding external defibrillators . . . ." Id. § 1.04.

The Agreement defines an "Affiliate" as "any entity that is controlled by Lilly, CPI or Medtronic on the Effective Date or becomes controlled by Lilly, CPI or Medtronic after the Effective Date." Id. § 1.01. An entity is considered "controlled" if Lilly, CPI or Medtronic directly or indirectly own "more than 95% of the capital stock of the corporation carrying the right to vote for or appoint directors . . . ." Id.

**2. ADR Provision**

In the event of a bona fide dispute under The Agreement the parties agreed to attempt to resolve the issue through good faith negotiations. See id. § 8.01.

Any party can, by written notice, have the dispute referred to designated employees within thirty days after the notice is received. See id. If the parties are unable to resolve the dispute, any one of them may invoke the ADR provision. See id.

Under the ADR provision, "any dispute that arises in connection with The Agreement . . . shall be resolved by binding Alternative Dispute Resolution ("ADR") in accordance with 35 USC 294 and in the manner described in Exhibit B." Id. § 8.02. Exhibit B provides that "[a]ll claims, disputes, controversies, and other matters in question arising out of or relating to The Agreement or to the breach thereof shall be settled by negotiation or, if negotiation is unsuccessful, by binding arbitration . . . ." Id., Ex. B.

The parties also agreed that notice of demand of arbitration shall be filed in writing with the general counsel of the other party, but that no notice of demand of any kind may be filed more than two years after the date the claim in question arose, and if the demand is not timely filed, the claim shall be deemed "released, waived, barred, and unenforceable for all time, and barred as if by statute of limitations." Id., Ex. B, subd. 1. Notwithstanding the choice of law provision in §9.05 of The Agreement, the parties stipulated that the Federal Arbitration Act would govern the arbitration provision. See id., Ex. B, subd. 2(F).

**B. The Acquisition of InControl**

The original owner of the '862 Patent was InControl, Inc. ("InControl"). The '862 Patent matured from, and claims priority to, a continuation-in-part patent

application filed on April 12, 1991. At the time the '862 Patent issued, InControl was an independent company. In September of 1998, Pegasus Acquisition Corporation ("Pegasus") purchased all outstanding shares of InControl. Pegasus then merged with and into InControl, with InControl surviving the merger. CPI, a wholly owned subsidiary of Guidant Corporation ("Guidant"), then purchased all shares of InControl, with InControl becoming a wholly owned subsidiary of CPI. In December of 1998, InControl formally dissolved and transferred all of its assets, including its patents, to CPI.

## III. DISCUSSION

### A. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. See Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik, 47 F.3d at 957.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving

party. See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designated 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quotating Fed. R. Civ. P. 1).

**B. Arbitration**

Congress has established, and the Supreme Court has recognized, controlling federal public policy requiring that private arbitration agreements be rigorously enforced. See Gannon v. Circuit City Stores, Inc., 262 677, 682 (8th Cir. 2001), *reh'g and reh'g en banc denied*, October 31, 2001. Where the parties have agreed to arbitration, their agreement is treated as a matter of contract upheld and enforced by the courts. See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983) Where "there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement" the matter must be submitted to arbitration. Telectronics Pacing Systems, Inc. v. Guidant Corp., 143 F.3d 428, 433 (8th Cir. 1998). Prior to reaching the merits of Medtronic's motion, the Court must resolve the arbitration issue. See, e.g., In re Sugar Beet Crop Ins. Litig., 228 F.Supp.2d 992, 994 (D.Minn. 2002).

CPI asserts that Medtronic's claim under the License Agreement is subject to The Agreement's binding arbitration provisions, and since Medtronic did not seek binding arbitration, the Court has no jurisdiction to decide the merits of the claim. CPI cites to Deprenyl Animal Health, Inc. v. The Univ. of Toronto

Innovations Found., 297 F.3d 1343, 1356 (Fed. Cir. 2002), to support its assertion that Medtronic's claim is subject to arbitration, and to Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 625-26, 105 S.Ct. 3346, 3343 (1985), for the proposition that this Court must rigorously enforce the agreement to arbitrate. Medtronic responds that a party to an arbitration agreement can waive the right to compel arbitration if it: 1) knew of an existing right to arbitrate; 2) acted inconsistently with that right; and 3) prejudiced the other party by its inconsistent acts. See Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 158 (8th Cir. 1991).

Medtronic asserts that the first time CPI raised the issue of arbitration was in its Memorandum Opposing Summary Judgment filed August 30, 2002. Medtronic asserts that CPI was aware of the right to arbitrate and acted inconsistently with that right by availing itself of this forum's Rules of Civil Procedure to obtain discovery. See Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993). Finally, Medtronic asserts that CPI's delay in raising the issue of arbitration has resulted in prejudice, in that Medtronic has undertaken the burden of responding to CPI's document requests and deposition notices.

CPI asserts that Medtronic's failure to seek arbitration means that its claim to the license for the '862 patent is barred by the terms of the arbitration provisions. CPI asserts that the arbitration provision required Medtronic to make a demand for binding arbitration within two years of the claim arising. CPI states that this dispute arose at least on June 15, 2000; the date Medtronic filed its

Complaint for Declaratory Judgment. CPI goes on to argue that since Medtronic has not yet made a demand for arbitration, and since over two years have passed, that Medtronic has waived any claim it has.

Medtronic emphasizes that the notice provision of the arbitration agreement anticipates a notice of demand "*of any kind*," and argues that claims other than those for binding arbitration may be presented. Medtronic argues that it submitted a "demand of any kind," within two years, when it asserted the affirmative defense that Medtronic had a license to practice the '862 Patent in its August 30, 2001 Answer to CPI's Counterclaim.

CPI does not ask this Court to compel arbitration pursuant to The Agreement, but rather seeks to use the ADR provision as a sword. CPI essentially argues that Medtronic is contractually barred from litigating the current dispute relating to the '862 Patent, because it did not pursue the dispute in the ADR forum. CPI asserts that it was Medtronic's responsibility to invoke the ADR provisions, and since they did not, the claim must wither on the vine. CPI's assertion has no merit. Nowhere in The Agreement is Medtronic tasked with the sole obligation to initiate ADR. To the contrary, under § 8.01, any party may invoke the ADR provision. Thus, if CPI wished, it had the right and duty to invoke arbitration, and it is settled law that such a right can be waived. See Barker v. Golf U.S.A., Inc., 154 F.3d 788, 793 (8th Cit. 1998).

It is undisputed that CPI knew it had a right to arbitration. It is also clear to the Court that CPI has acted inconsistently with that right. CPI answered the

Complaint and asserted a Counterclaim related to the '862 Patent. CPI made document requests, noticed depositions and has sought this Court's assistance with discovery pursuant to the Federal Rules of Civil Procedure. Furthermore, CPI did not mention any right to arbitration until over two years after this case was filed. Finally, CPI's invocation of arbitration rights carries with it inherent prejudice to Medtronic: if the Court were to accept CPI's position, Medtronic's claim would be barred, both in this forum and in the ADR forum. As noted above, CPI does not actually seek to arbitrate the dispute regarding the '862 Patent, but rather seeks to bar Medtronic's claim. CPI has waived any arbitration rights it had under The Agreement, with respect to the '862 Patent.

### C. Medtronic's Summary Judgment Motion as to the '862 Patent

Pursuant to The Agreement, this Court must apply Minnesota contract law in interpreting its provisions. Under Minnesota law, "[t]he construction and effect of a contract are questions of law for the court." Turner v. Alphi Phi Sorrority House, 276 N.W.2d 63, 66 (Minn. 1979); State Farm Mut. Auto. Ins. Co. v. Cincinnati Ins. Co., 651 N.W.2d542, 546 (Minn. Ct. App. 2002). "In interpreting a contract, the language is to be given its plain and ordinary meaning." Brookfield Trade Center, Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). Contract provisions must be construed in accordance with purpose of the agreement. See Smith v. State Farm Fire & Casualty Co., 656 N.W.2d 432, 435 (Minn. 2003). If the contract is unambiguous, and no factual disputes exist,

judgment is appropriate as a matter of law. See Blattner v. Forster, 322 N.W.2d 319, 321 (Minn. 1980).

Medtronic asserts that it is entitled to judgment as a matter of law, because the '862 Patent fulfills all of the § 1.05 criteria necessary to be considered a Licensed Patent: 1) it is owned by a party to The Agreement; 2) it relates to a Cardiac Stimulation Device; 3) in a Field of Use; and 4) it was filed before the Effective Date of The Agreement.

CPI asserts that the '862 Patent is not a "Licensed Patent" as defined by The Agreement. CPI claims that The Agreement intended to include only those patents that were owned by, or licensed to, the parties to The Agreement as of the effective date of The Agreement. CPI argues that because the '862 Patent was owned by InControl, an independent company at the Effective Date of The Agreement, it cannot be a "Licensed Patent."

The essence of CPI's argument is its interpretation of §1.05 and Exhibit A of The Agreement. CPI argues that The Agreement makes no mention of after-acquired or later-licensed patents, but rather, that it specifies that the entirety of the Licensed Patents were defined as of the Effective Date. CPI's argument is essentially that the universe of patents covered by The Agreement closed as of the Effective Date of The Agreement, and any later-acquired patents, even those filed before the Effective Date, cannot be considered Licensed Patents.

Medtronic responds that § 1.05 expressly provides for the acquisition of entities after the Effective Date, and the concomitant acquisition of patents owned

by those entities. Medtronic argues that, to the extent those patents would meet the criteria set out in The Agreement, they would be considered Licensed Patents. Medtronic asserts that part of the purpose of The Agreement was to avoid future litigation regarding the cross-licensing of patents, and that providing a mechanism by which later-acquired patents were brought within its scope is in keeping with the spirit and the letter of The Agreement.

Contrary to CPI's assertions, The Agreement does not exclude the '862 Patent from the class of "Licensed Patents" covered by § 1.05. CPI, a party to The Agreement, owns the '862 Patent. The '862 Patent relates to a Cardiac Stimulation Device as defined is § 1.02. The '862 Patent is in a Field of Use as defined in § 1.04. Finally, the '862 Patent matured from a continuation-in-part patent application filed on April 12, 1991, an application filed just over a month before the parties entered The Agreement. Under the plain and unambiguous requirements of § 1.05, the '862 Patent is a "Licensed Patent."

CPI's contention that Exhibit A delineates the universe of patents considered "Licensed Patents" is without merit. In fact, § 1.05 specifically states that the list of Patents included in Exhibit A does not limit § 1.05. To accept CPI's tortured interpretation of The Agreement would do violence to both the purpose and clear language of the contract. Under § 2.01(a) of The Agreement, Medtronic has a non-exclusive, fully paid up license to practice the '862 Patent. Because Medtronic has a valid license, there can be no infringement and Medtronic's Motion for Summary Judgment must be granted. See Jim Arnold

Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1577 (Fed. Cir. 1997) (noting that a license agreement is a promise by a licensor not to sue the licensee).

## IV. CONCLUSION

CPI waived any right it had to compel arbitration, pursuant to The Agreement, because it has acted inconsistently with that right to Medtronic's detriment. The '862 Patent is covered by The Agreement as a "Licensed Patent," and Medtronic has a valid cross-license. With a valid license there can be no infringement, and Medtronic is entitled to judgment as a matter of law.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment regarding U.S. Patent No. 5,490,862 is **GRANTED**.

Dated: May 16, 2003

Michael J. Davis
Michael J. Davis
United States District Court Judge

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd